KENNETH E. STANLEY

*v.*

SEWELL COAL CO., *a Corp.*

(No. 14857)

Decided December 18, 1981.

Dissenting Opinion January 8, 1982.

Joseph R. Martin for appellant.

*Jackson, Kelly, Holt & O'Farrell, Roger A. Wolfe* for appellee.

MILLER, JUSTICE:

Kenneth E. Stanley appeals from a judgment of the Circuit Court of Nicholas County dismissing his retaliatory discharge action against Sewell Coal Company (Sewell) on the ground that it was time-barred by the one-year limitation period of W. Va. Code, 55-2-12(c). Stanley contends that his action sounds in contract and that the applicable limitation period is therefore five years under W. Va. Code, 55-2-6. Alternatively, Stanley argues that his action sounds in tort and should take the two-year limitation period of W. Va. Code 55-2-12(b), since his action can be considered as one for fraud and deceit which is given survivability under W. Va. Code, 55-7-8a.

I.

Stanley was an employee at-will with none of the terms or conditions of his employment being the subject of a written contract. According to the allegations of his complaint, Stanley was employed by Sewell as a section foreman from January 14, 1975, until he was discharged effective January 12, 1977. Stanley alleged that he and another employee were injured in an industrial accident in the spring of 1976. He also alleged that Sewell falsely reported the accident to the Mine Enforcement Safety Administration as a no lost-time accident, and advised him that he could miss work when necessary because of the occupational injuries.

On January 12, 1977, Stanley became ill, was unable to work, and consulted a physician who prescribed a drug which interfered with his ability to perform his duties. He notified Sewell that he would be unable to return to employment until he had completed the prescribed course of medication and had been released by his physician. When he returned to work on January 24, 1977 and presented his doctor's certification, Stanley was advised that he was being discharged from employment for excessive absenteeism. Stanley averred that in contravention of substantial public policy principles, he was discharged by Sewell in an attempt to prevent discovery of its false reporting of accidents to the Mine Enforce-

ment Safety Administration. As relief, Stanley sought to recover his lost wages and future loss of earnings due to a decreased income in his new employment.[1]

## II.

Stanley's contention that his action sounded in contract was resolved in *Shanholtz v. Monongahela Power Company*, 165 W. Va. 305, 270 S.E.2d 178, 182 (1980). There we held that an action brought by an employee at-will on the ground that he was discharged in contravention of some substantial public policy principle sounded in tort and was subject to the limitation periods embodied in W. Va. Code, 55-2-12.[2] This type of cause of action has sometimes been called a retaliatory or wrongful discharge.

Although *Shanholtz* recognized that a "tort action must be brought within one or two years after the cause of action shall have accrued," 270 S.E.2d at 181, it was unnecessary for the Court to decide whether the one- or two-year limitation period was applicable because the complaint in that case had been filed more than two years after the cause of action accrued. That question is squarely presented by this appeal.

Our consideration of the statute of limitations question is controlled by *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W. Va. 588, 244 S.E.2d 321 (1978), where we made an analysis of our limitation of action statute, W. Va. Code, 55-2-12, and our survivability statute, W. Va. Code, 55-7-8(a), and concluded that these statutes had to be read *in pari materia* since they "were adopted as a part of a

---

[1] We do not address the factual merits of the claim since the case was dismissed as barred by the one-year statute of limitations.

[2] W. Va. Code, 55-2-12, provides in pertinent part, as follows:

"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."

common plan." ____ W. Va. at ____, 244 S.E.2d at 324.[3] We went on to state in *Snodgrass* that:

> "[T]he provisions of subsection (a) of W.Va. Code, 55-7-8a, statutorily create survivability by the following language:
>
> " 'In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.' "The effect of this subsection is to create statutory survivability for the causes of action contained therein to parallel the same causes of action set out in W.Va. Code, 55-2-12(a) and (b)."
> ____ W. Va. at ____, 244 S.E.2d at 324-25.

Sewell, however, asserts that the retaliatory discharge cause of action created in *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), cannot be considered as a species of fraud and deceit, because if such a cause of action were founded upon fraud and deceit this Court simply could have utilized the common law action to create the remedy. This argument misconceives the underlying rationale of *Harless*, which is expressed in its single syllabus:

> "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."

In *Harless*, we adopted the view of a number of other courts that concluded an employer may be liable for firing an employee for the reason that the employee chose to exercise some substantial public policy principle, and that

---

[3] The development of these two statutes can be traced to the dissent by Judge Donley in *Tice v. E. I. DuPont De Nemours & Co.*, 144 W. Va. 24, 106 S.E.2d 107 (1958). *See*, discussion, *Snodgrass*, 244 S.E.2d at 324.

such a firing is founded in bad faith or maliciousness. We cited *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 133, 316 A.2d 549, 551 (1974), where the court spoke in terms of "a termination . . . which is motivated by bad faith or malice or based on retaliation . . ." We also referred to *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977), where the court spoke in terms of "an implied covenant of good faith and fair dealing" in connection with at-will employment. In note 4 of *Harless*, we listed a number of law review articles covering this subject. Most of these articles clearly favor the interposition of some equitable principles to prevent a discharge that contravenes some substantial public policy principle.

While it is true that we did not expressly utilize fraud concepts in *Harless*, its underlying rationale is clearly compatible with our general principles of fraud. Fraud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another. *See, Dickel v. Smith,* 38 W. Va. 635, 18 S.E. 721 (1893); 8B Michie's Jurisprudence, *Fraud and Deceit* §§ 1 and 2 (1977); 37 Am.Jur.2d *Fraud and Deceit* § 1 (1968).

Fraud may be either actual or constructive. The word "fraud" is a general term and construed in its broadest sense embraces both actual and constructive fraud. Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another. *Hulings v. Hulings Lumber Co.*, 38 W. Va. 351, 18 S.E. 620 (1893). Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. *Miller v. Huntington & Ohio Bridge Co.*, 123 W. Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F.Supp. 1266 (S.D. W.Va. 1969); *Bowie v. Sorrell*, 113 F.Supp. 373 (W.D. Va. 1953).

Constructive fraud is a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its ten-

dency to deceive others, to violate public or private confidence, or to injure public interests. *Miller v. Huntington & Ohio Bridge Co.*, 123 W. Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F.Supp. 1266 (S.D. Va. 1969); *Bowie v. Sorrell*, 113 F.Supp. 373 (W.D. Va. 1953); *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555 (1967); *Bank v Board of Education of City of New York*, 305 N.Y. 119, 111 N.E.2d 238 (1953); *Braselton v. Nicolas & Morris*, 557 S.W.2d 187 (Tex. Civ. App. 1977).

Perhaps the best definition of constructive fraud is that it exists in cases in which conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual fraud. *In Re Arbuckle's Estate*, 98 Cal. App.2d 562, 220 P.2d 950 (1950). Constructive fraud does not require proof of fraudulent intent. The law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private.[4] *Perlberg v. Perlberg*, 18 Ohio St.2d 55, 247 N.E.2d 306 (1969). In this respect, constructive fraud closely parallels the wrongful discharge in *Harless*, which contravened a substantial public policy principle.

The problem here is that our survivability statute, W. Va. Code, 55-7-8a, uses broad terminology as to what types of causes of actions will survive. In determining whether a particular cause of action fits into one of these broad categories, we must of necessity apply the general terms to the particular case. Here, we conclude that the underlying principles of a retaliatory discharge cause of action are sufficiently related to an action for fraud and deceit so that the two-year statute of limitations applies under W. Va. Code, 55-2-12, and W. Va. Code, 55-7-8a. In

---

[4] We make no attempt in this analysis to determine if there is a clear delineation between fraud and deceit. Our cases at times have used the terms interchangeably. *E.g., Horton v. Tyree*, 102 W. Va. 475, 135 S.E. 597 (1926); *Staker v. Reese*, 82 W. Va. 765, 97 S.E. 641 (1919). Prosser treats the subject of fraud and deceit as a part of the broader tort of misrepresentation. Prosser, *Law of Torts*, Chapter 18 (1971 ed.).

reaching this result, we recognize that as a general rule a survival statute such as W. Va. Code, 55-7-8a, is to be liberally construed as it is remedial in nature. *Carter v. American Casualty Co.*, 131 W. Va. 584, 590, 48 S.E.2d 404, 408 (1948); *cf. Wilder v. Charleston Transit Co.*, 120 W. Va. 319, 197 S.E. 814 (1938); 1 Am. Jur.2d *Abatement, Survival & Revival* §54 (1962).

Although we have found that for purposes of our survival statute, a cause of action for retaliatory discharge is analogous to the broader action of fraud and deceit, we do not mean to imply that any act which may constitute constructive fraud will automatically be sufficient to constitute a retaliatory discharge. The general standards set forth in *Harless* still govern as to the substantive cause of action for a retaliatory discharge.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Nicholas County since the two-year statute of limitations is applicable.

*Reversed.*

NEELY J. *dissenting*:

The reiteration of the syllabus point from *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), prompts me to note once again that "the primary effect of the courts is not upon the cases which they decide, but rather upon the cases which they *do not* decide." *See Shanholtz v. Monongahela Power Co.*, ____ W. Va. ____, 270 S.E.2d 178, 183 (1980) (Neely C, C.J., concurring). By creating the cause of action in *Harless*, this Court has spawned a plethora of law suits of which the instant case is but one example. The plaintiff here has used *Harless* as the basis for a cause of action which on its face seems groundless. He claims that he was discharged by the coal company so that the coal company could prevent discovery of its false reporting of accidents to the Mine Enforcement Safety Administration. I submit that this is a nuisance lawsuit made possible only the improvident holding in *Harless*. A greater harm worked by

*Harless* is in the unseen situations in which employers are reluctant to release unsatisfactory employees for fear of becoming liable in a suit brought under the menacing and nebulous penumbra of the *Harless* holding.

Not content merely to permit the *Harless* cause of action to continue its morbid, Grendel-like rampage through our economic system, the majority has given the monster even greater strength by extending the time in which the action may be brought. Hence employers who have determined to let an employee-at-will go must now face the specter of an increased period of liability in which the pall of nuisance litigation will hang over their enterprises. In a feat of alchemy worthy of Paracelsus' envy, the majority has transformed an action based on retaliatory discharge into one based on fraud. Without resorting to cauldron or incantation I feel that if we must live with this cause of action it is limited by W. Va. Code, 55-2-12(c) [1959] which provides a one year period of limitations. Hence I would affirm the decision below.