**Richard Patrick FEEMSTER, Sr., Plaintiff–Appellant,**

v.

**BJ–TITAN SERVICES CO./TITAN SERVICES, INC., Defendant–Appellee.**

No. 88–3304.

United States Court of Appeals, Fifth Circuit.

May 22, 1989.

Julianne Owens, Terrence C. Forstall, Courtenay, Forstall, Grace & Hebert, New Orleans, La., for plaintiff-appellant.

Glenn A. Duhl, Donald Ensenat, Carmouche, Fray & Hoffman, New Orleans, La., for defendant-appellee.

Before GARZA, JOLLY and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Richard Patrick Feemster urges us to create a private right of action under general maritime law for wrongful discharge for refusal to carry out an assignment that would violate a federal safety statute. We decline to create such a right and therefore affirm the judgment of the district court.

I

Richard Patrick Feemster, Sr. is a tugboat captain who worked for BJ–Titan on the M/V JUNE J, pushing barges. At about 5 p.m. on February 18, 1987, BJ–Titan instructed Feemster to push a barge from Venice, Louisiana, to Lake Pagie, Louisiana, an eighteen-hour trip. Feemster contends that BJ–Titan was requiring him to make this trip without stopping, although BJ–Titan disputes that it forbade stops. Feemster refused to make the run on the grounds that it was too long to be safely navigated by one person and that it would violate a federal law that generally restricts vessel operation to twelve hours in a twenty-four-hour period. *See* 46 U.S.C. § 8104(h). When Feemster continued to refuse to accept the assignment, BJ–Titan management discharged him.

Feemster filed a complaint seeking damages, *inter alia*, for wrongful discharge under general maritime law. The district court granted summary judgment for BJ–Titan on grounds that Feemster failed to allege a cause of action. Feemster appeals.

II

Feemster argues that he has an implied right of action under general maritime law for wrongful discharge for refusal to perform an unlawful act. He contends that this case is analogous to *Smith v. Atlas Offshore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981), in which we implied a cause of action when a seaman was fired for maintaining a Jones Act personal injury claim against his employer. Feemster urges us to apply the rationale of *Smith* to the facts of this case. In *Smith* we acknowledged that the seaman was employed at will and that employment-at-will may be terminated for any or no reason, including a morally reprehensible reason. Nonetheless, in that case we looked to exceptions to the doctrine that had been recognized when the discharge offended public policy, and found that a seaman has a cause of action if a substantial motivating factor in his discharge is the filing of a Jones Act action against his employer.

BJ–Titan argues that *Smith* should not be broadened to provide for a cause of action in the instant case because the *Smith* court expressly limited its holding to its own facts. In addition, BJ–Titan cites *Belanger v. Keydril Co.*, 596 F.Supp. 823,

826 (E.D.La.1984), *aff'd without opinion,* 772 F.2d 902 (5th Cir.1985), upon which the district court here based its decision. In *Belanger,* the district court declined to fashion a cause of action for age discrimination under general maritime law. The court distinguished *Smith* on the grounds that *Smith* applies only when seamen exercise a legal right that exists under maritime law, e.g., the right to file a Jones Act action. BJ–Titan argues that *Smith* and *Belanger,* read together, lead to the conclusion that the Fifth Circuit has recognized no general cause of action for wrongful discharge under maritime law.

## III

Before addressing whether the rationale of *Smith* is applicable in this case, we must take a closer look at the public policy exception on which Feemster relies. Some courts have recognized exceptions based on public policy considerations that can, under certain circumstances, override the employment-at-will doctrine. These exceptions may apply when an employee is discharged for (1) refusal to commit an unlawful act, (2) performance of an important public obligation, or (3) exercise of a statutory right or privilege. *See* 96 Harv.L.Rev.1931, 1936–73; *see also Smith,* 653 F.2d at 1061, n. 9 (list of authorities regarding public policy exception). *Smith* explicitly relied on the third public policy exception to find a cause of action under general maritime law. Feemster seeks to apply the first exception. Specifically, he argues for the recognition of a cause of action for refusing to perform a job assignment that would have violated the federal statute, 46 U.S.C. § 8104(h), which states: "On a [towing vessel of 26 feet or longer, such as the one used here] an individual licensed to operate a towing vessel may not work for more than 12 hours in a consecutive 24–hour period except in an emergency."

## IV

After thorough consideration of the facts and circumstances of the case, we have concluded that an exception to the employment-at-will doctrine is not warranted and that *Smith* should not be broadened to apply here. In the first place, public policy considerations are not so clearly implicated in this case as they were in *Smith.* In *Smith,* the plaintiff had a statutory right to bring a personal injury action against his employer. His discharge was a clear case of retaliation for exercising a statutory right since the employer punished Smith for doing what the law explicitly permitted him to do. In this case, as Feemster concedes, the statute at issue provides him with no personal right to refuse a management directive with which he disagreed, even if it violated a safety statute.

Second, we think it is inappropriate for us to engraft on this congressional act an additional provision granting a private cause of action. To do so would create new rights and duties when Congress, in enacting the statutes on which Feemster relies, clearly chose not to do so. When Congress reorganized and revised Title S. 46 in 1983, it stated its purpose as follows: "The ultimate aim of the legislation is three-fold: to make *maritime safety and seaman protection law easier for the Coast Guard to administer,* to make it less cumbersome for the maritime community to use, and to make it more understandable for everyone involved." H.R. Rep. No. 338, 98th Cong., 1st Sess. 113 (1983) U.S.Code Cong. & Admin.News 1983, p. 924 (emphasis added). In the light of its own statement about the aim of this legislation and the means of enforcement, and recognizing that Congress has only recently amended these laws, we believe it is significant that Congress provided no private right of action for retaliatory discharge. The general purpose of this legislation is to promote maritime safety, but not with employees acting as private enforcers and as private attorneys general; the agent of enforcement is the Coast Guard.

Third, our denial of a legal cause of action to a seaman here does not deny an individual seaman a voice in the enforcement scheme and the right to claim the benefits of the statute. An employee can complain of safety violations to the Coast

Guard and enlist its aid to prevent violations. If Feemster had filed such a complaint and had been fired for doing so, he certainly would have a stronger argument that his discharge contravened public policy. The reaction of the employer in that situation would have been more akin to true retaliation for exercising a given right as occurred in *Smith*.

Fourth, in our view, this dispute never ripened to the extent that it can support a claim of retaliatory discharge for his refusal to commit an unlawful act. Feemster simply interposed his judgment against that of management that a safety violation would occur if he made the trip and he refused the assignment. He was discharged for that refusal. Feemster never embarked on his journey and there was no violation of law. Whether the law would have been violated is speculative. Thus, because the discharge arose in the absence of a clear requirement by management that Feemster violate the statute, it is difficult to characterize this as a retaliation that offends public policy.

For these reasons, the judgment of the district court is

AFFIRMED.