**In re MOREHEAD MARINE.**

**No. C–1–93–571.**

United States District Court,
S.D. Ohio, W.D.

Feb. 15, 1994.

---

**1194**

Todd Matthew Powers, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Morehead Marine Service Inc., as owner of the MV Ann Miller for Exoneration from or Limitation of Liability.

Ronald Richard Parry, Arnzen Parry & Wentz PSG, Covington, KY, for Lou Anne Littell, Admtrx, Administratrix of the Estate of William M. Littell.

Ronald Richard Parry, Arnzen Parry & Wentz PSG, Philip Taliaferro, III, Taliaferro & Mann, Covington, KY, for Curtis Hall, Admtr, Executor of the Estate of Judy Hall.

Glen Edward Hazen, Jr., Morgan & Hazen, Newport, KY, for Edward Bacon.

### ORDER DENYING MOTIONS TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiffs' Motion For Leave to File Claim (doc. 9), the Defendant's Response (doc. 14), the Plaintiffs' Reply (doc. 22), the Defendant's Motion to Dismiss (doc. 11), the Plaintiffs' Response (doc. 19), the Defendant's Reply (doc. 25), the Defendant's Motion to Dismiss the Plaintiff Edward Bacon's Complaint (doc. 17), the Plaintiff's Response (doc. 21), the Defendant's Reply (doc. 27), the Defendant's Motion for Partial Dismissal of Plaintiff Hall's Complaint (doc. 16) the Plaintiff's Response (doc. 24), and the Defendant's Reply (doc. 27). A hearing was held on this matter on January 31, 1993. At the hearing the Court granted the Plaintiffs' Motion to File Claim out of Time (doc. 9). Furthermore, at the hearing, the Plaintiffs conceded that they are not entitled to a jury trial in this case.

### BACKGROUND

This maritime action arose out of an alleged collision on the Ohio River between a tow pushed by the Defendant's ship, the *MV Ann Miller,* and a pleasure craft occupied by three non-seamen, two of whom died. The Plaintiffs in this action, the survivors of the non-seaman decedents, are seeking pecuniary and non-pecuniary damages including punitive damages, loss of society, future earnings and support.

The primary issue before the Court is whether under principles of general maritime law the Plaintiffs are entitled to recover non-pecuniary damages. According to the Defendant, this question has been answered in the negative by the United States Supreme Court in *Miles v. Apex Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), and by the Sixth Circuit in *Miller v. American President Lines, Ltd.,* 989 F.2d 1450 (6th Cir. 1993).

On the contrary, the Plaintiffs claim that this issue has been resolved in their favor by an earlier Supreme Court case, *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). For the following reasons we conclude that the limitation on recoverable damages set forth in *Miles* and *Miller,* does not apply to this case. Consequently, we hold that under general maritime law, the Plaintiffs are entitled to non-pecuniary damages including loss of society, punitive damages and lost future wages.

### ANALYSIS

#### I

■ In our analysis, we are guided by the principle that absent a relevant statute, general maritime law, as developed by the judiciary, applies in admiralty cases. *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865

(1986). Furthermore, it is undisputed that no statute addresses the death of a non-seaman killed on territorial waters. Consequently, we must turn to general principals of maritime law, as developed by the judiciary, to resolve the question before the Court.

## II

■ As noted above, the Defendant argues that under principles of general maritime law, a plaintiff may not recover non-pecuniary damages in a wrongful death suit involving a non-seamen killed in territorial waters. In support of its argument the Defendant relies chiefly on the United States Supreme Court in *Miles v. Apex Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), and the Sixth Circuit in *Miller v. American President Lines, Ltd.*, 989 F.2d 1450 (6th Cir. 1993). We find that these case do not control the outcome of the case at bar.

First, the issue before the Court in *Miles* was "the preclusive effect of the Jones Act [46 U.S.C.App. § 688] for deaths of true seamen." *Miles* 498 U.S. at 31–32, 111 S.Ct. at 325; *Miller*, 989 F.2d at 1455. Thus, *Miles* applies to "all actions for the wrongful death of a seaman, whether under DOHSA [the Death on the High Seas Act, 46 U.S.C.App. §§ 761, 762], the Jones Act, or General Maritime Law." *Miles* 498 U.S. at 33, 111 S.Ct. at 326; *Miller*, 989 F.2d at 1455. The Court concluded that the Jones Act precluded the recovery of non-pecuniary damages for the deaths of seamen. *Miles* 498 U.S. at 33, 111 S.Ct. at 326.

■ Similarly, the Sixth Circuit in *Miller* "addressed the same general question ..." before the Supreme Court in *Miles*, i.e. "the preclusive effect of the Jones Act for deaths of true seamen." *Miller*, 989 F.2d at 1455

(citing *Miles* ). Thus, as the Sixth Circuit stated, "the question before us is whether the unavailability of punitive damages under the Jones Act precludes the recovery of punitive damages under a general maritime law unseaworthiness claim for the wrongful death of a seamen." *Id.* at 1455. Relying on *Miles*, the Sixth Circuit concluded that it did. *Id.* at 1459.[1]

Additionally, and perhaps most significantly, the holdings of *Miles*, *Miller* and another Supreme Court case, *Mobile Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), were explicitly based on the reasoning that to allow the recovery of broader remedies under general maritime law than those permitted by Congress under, for example, the Jones Act or DOHSA, would be to "overstep the well-considered boundaries imposed by federal legislation." *Miles* 498 U.S. at 27, 111 S.Ct. at 322; *Higginbotham*, 436 U.S. at 626, 98 S.Ct. at 2015 ("we have no authority to substitute our views for those expressed by Congress in a duly enacted statute").[2]

In examining the preclusive effect of the Jones Act on the recoverability of non-pecuniary damages in a general maritime wrongful death action, the *Miles* Court relied on the reasoning of *Higginbotham*. Discussing how the Court in *Higginbotham* had previously determined that non-pecuniary damages were not available for deaths occurring on the high seas, the *Miles* Court stated that "Congress made the decision for us." *Miles* 498 U.S. at 31, 111 S.Ct. at 325. The Court continued that the "DOHSA, by its specific terms, limits recoverable damages in wrongful death suits [for deaths occurring on the high seas] to 'pecuniary loss sustained by the persons for whose benefit the suit is brought.'" *Id.* (quoting DOHSA) (emphasis

---

1. The court stated that "[o]ur analysis of this question must be guided by the reasoning of the Supreme Court in *Miles*." *Miller* 989 F.2d at 1455. "Under *Miles*, then, the goal of this court is to articulate a uniform rule regarding the availability of punitive damages in all actions for the wrongful death of a seaman." *Id.* at 1457.

2. The Court in *Higginbotham* addressed whether DOHSA precluded recovery of non-pecuniary damages in a general maritime wrongful death action for deaths occurring on the high seas. Although the DOHSA applies to "anyone" and

not only to seamen, it is expressly limited to deaths occurring on the high seas. Furthermore, as discussed below, the crucial factor upon which the *Higginbotham* court relied, was that Congress had expressly addressed the issue of recoverable damages for deaths occurring on the high seas by enacting the DOHSA; Congress having chosen to address the issue, the court concluded that it was not free to go beyond those express congressional limits. *Higginbotham*, 436 U.S. at 623–26, 98 S.Ct. at 2013–15.

in original). The Court noted that "[t]his explicit limitation forecloses recovery for non-pecuniary loss, such as loss of society, in a general maritime action ..." for deaths occurring on the high seas. *Id.* The Court reasoned that "Congress has spoken directly to the question of recoverable damages on the high seas, and 'when it does speak directly to a question, the courts are not free to "supplement" Congress' answer[s]....'" *Id.* (quoting *Higginbotham,* 436 U.S. at 625, 98 S.Ct. at 2015). "Congress, in the exercise of its legislative powers," the Court noted, "is free to say 'this much and no more.' An admiralty court is not free to go beyond those limits." *Id.* 498 U.S. at 24, 111 S.Ct. at 321.

Thus, "in an area *covered by statute,* it would be no more appropriate to proscribe a different measure of damages than to proscribe a different statute of limitations, or a different class of beneficiaries." *Id.* at 31, 111 S.Ct. at 325 (emphasis added) (internal quotations omitted). The *Miles* Court found that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action ... than Congress has allowed...." *Id.* at 32–33, 111 S.Ct. at 325–26.[3] Under the Jones Act, the Court found, Congress had elected to limit the remedies available for injured or killed seamen to pecuniary damages only; the Supreme Court thus concluded that it was not free to supplement those remedies by allowing the recovery of nonpecuniary damages.[4] *Id.* at 31–33, 111 S.Ct. at 325–26. Significantly, however, the Court observe that supplementation by the courts in an area *left open by congress* was "entirely appropriate." *Id.* at 31, 111 S.Ct. at 325.

As noted above, no statutory provision governs the death of a non-seaman killed on territorial waters. Here, there is no "explicit limitation foreclos[ing] recovery for nonpecuniary loss ..." *Miles,* 498 U.S. at 31, 111 S.Ct. at 325, as there is with respect to cases falling within the scope of the Jones Act and DOHSA. Unlike in *Miles, Higginbotham* and *Miller,* Congress has not said "this much and no more." Therefore, as the *Higginbotham, Miles* and *Miller* courts expressly relied on the fact that Congress had specifically limited the remedies available under certain circumstances not present here, we are not bound by the logic and reasoning of those cases. *See Garner v. Dravo Basic Materials Co.,* 768 F.Supp. 192, 194–95 (S.D.W.Va.1991). Simply put, this type of case involves an area left open by Congress, and thus, supplementation by the courts is entirely appropriate. *See Miles,* 498 U.S. at 31, 111 S.Ct. at 325.[5]

### III

We conclude that this case is governed by the reasoning if not the actual holding, of

---

3. The general maritime wrongful death action is a judicially created cause of action. *Gaudet,* 414 U.S. at 583, 94 S.Ct. at 814; *see Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

4. The Court noted that although the Jones Act does not explicitly limit damages to any particular form by its express language, the Jones Act incorporated "FELA [Federal Employers' Liability Act, 45 U.S.C. § 51–59] unaltered into the Jones Act, [and thus] Congress must have intended to incorporate the pecuniary limitations on damages as well." *Miles,* 498 U.S. at 32, 111 S.Ct. at 325.

5. The district court for the Southern District of West Virginia, confronted with virtually the same issue that this court now faces, stated that
   [b]asically [the defendant] asserts that whether the decedent is a seaman, longshoreman, harbor worker or recreational boater, a wrongful death action only provides damages governed by the general maritime law. That general

maritime law is set forth in *Miles* to preclude the recovery for any decedent's lost future earnings.... [The defendant's] argument is appealing on its face but it fails to provide a sound basis for prohibiting recovery of future income of non-seamen. *Miles* involves the death of a seaman and the Supreme Court appropriately looked to the Jones Act, which limits recovery to losses suffered during the decedent's lifetime.... The Supreme Court refused to go beyond the Congressionally limited system of recovery for a seaman's injury and death. These considerations are not present.
   [The decedent in this case], as a non-seaman who died on territorial waterways, is not covered by the Jones Act or the DOHSA.... It is inconsistent with federal maritime law to prohibit damages in the form of lost future income when there is no explicit statutory or federal common law prohibition on such damages. *Garner,* 768 F.Supp. at 194–95.

*Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). We recognize that the *Gaudet* decision was specifically limited to its facts by *Miles*. *Miles*, 498 U.S. at 31, 111 S.Ct. at 325; *Miller* 989 F.2d at 1459. Although its holding is not controlling, we do find that the underlying reasoning of the *Gaudet* opinion applies with the same force to the case at bar as it did to the facts of the *Gaudet* case itself.[6]

The United States Supreme Court held in *Gaudet* that a dependant plaintiff in a maritime wrongful death action could recover for the pecuniary losses of support, services, and funeral expenses as well as for non-pecuniary damages such as loss of society suffered as the result of the death of a longshoreman in territorial waters. *Gaudet*, 414 U.S. at 584–91, 94 S.Ct. at 814–18. The Court reasoned that "the policy underlying the [judicially created wrongful death] remedy is to insure compensation of the dependents for *their* losses resulting from the decedent's death...." *Id.* at 583, 94 S.Ct. at 814 (emphasis in original). Thus, the Court stated, "our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." *Id.* at 588, 94 S.Ct. at 816; *Complaint of Cambria Steamship Co.*, 505 F.2d 517, 522 (6th Cir.1974); *cert. denied*, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975) (quoting *Gaudet* ). Therefore, in determining the remedies available under the general maritime law, the courts must "be guided by the principle of maritime law that 'certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when *not required to withhold it by established and inflexible rules*'...." *Gaudet*, 414 U.S. at 583, 94 S.Ct. at 814 (quoting *The Sea Gull*, 21 F.Cas. 909, 910 (No. 12,578) (C.C.Md. 1865)); *Moragne v. States Marine Lines*, 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970); *Daughenbaugh v. Bethlehem Steel Corp.*, 891 F.2d 1199, 1204 (6th Cir. 1989) (quoting *Moragne*, quoting *The Sea Gull* ); *Garner v. Dravo Basic Materials Co.*, 768 F.Supp. 192, 195 (1991) (emphasis added).

In this case the decedents, like longshoremen at the time the *Gaudet* case was decided, are not protected or governed in any way by statute. Unlike in *Miles*, *Higginbotham* and *Miller*, Congress has not limited the type of recovery available here. Consequently, we hold that under general maritime law, as there exists no statutory provision to the contrary, the Plaintiffs in this case are entitled to non-pecuniary damages, including loss of society, lost future income and punitive damages. *See Gaudet*, 414 U.S. 573, 94 S.Ct. 806; *Garner*, 768 F.Supp. 195.[7]

**CONCLUSION**

In the *Miles, Higginbotham* and *Miller* cases, the Supreme Court and the Sixth Circuit were called upon to address issues already decided by Congress. Unwilling to over-step judicial authority in the area of general maritime law, the Courts adhered to specific limitations on recoverable damages imposed by Congress under certain circumstances. Unlike *Miles, Higginbotham* and *Miller*, however, *Gaudet* addressed the re-

---

6. The *Miller* court pointed out that *Miles* limited *Gaudet* to its facts, holding that "it applies only to territorial waters, and it applies only to longshoremen." *Miller*, 989 F.2d at 1459; *Miles*, 498 U.S. at 31, 111 S.Ct. at 325. Furthermore, upon passage of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, *Gaudet* was no longer applicable even to its own facts. *Miller* 989 F.2d at 1459. Thus, the *Miller* court observed, *Gaudet* "has therefore been condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled." *Miller*, 989 F.2d at 1459. We agree with this characterization as it pertains to cases where Congress has set the parameters of recovery such as in *Miles, Higginbotham* and *Miller*. However, we also conclude that this is precisely a case—and perhaps the only type of case—where *Gaudet*'s reasoning is wholly applicable. In this case, as it was for longshoremen at the time of the *Gaudet* decision, Congress has not spoken on the matter before the Court, and thus, the reasoning in *Gaudet* is entirely applicable to the case at bar.

7. Punitive damages had long been recognized as an appropriate remedy under general maritime law. *See Miller*, 989 F.2d at 1455, 1458. We note that any limitations on the availability of punitive damages enunciated in *Miller* based on the *Miles* decision are inapplicable to this case, for the reasons discussed in Part II above.

coverability of non-pecuniary damages in an area of general maritime law not falling within the scope of any statute. In this case, like in *Gaudet*, no legislation limits recovery to non-pecuniary damages. We therefore hold that the Plaintiffs in this case may seek the recovery of non-pecuniary damages.

Accordingly, for the forgoing reasons, we hereby GRANT the Plaintiffs' Motion for Leave to File Claim Out of Time, VACATE the Jury Demand, and DENY the Defendant's Motions to Dismiss.

SO ORDERED.